## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Scott W. DiBiasio,

                Plaintiff/Counter-Defendant

v.

Plasma Protein Therapeutics Association,

                Defendant/Counter-Plaintiff.

Civil Action No. 1:07-cv-00300 (PLF)

## MOTION FOR LEAVE TO FILE SUPPLEMENTAL ANSWER AND COUNTERCLAIMS

Comes now Defendant Plasma Protein Therapeutics Association ("PPTA"), through undersigned counsel, and respectfully moves this Court, pursuant to Fed. R. Civ. P. 13(e) and 15(d), for leave to file a supplemental answer setting forth counterclaims which were not acquired by PPTA until after service of PPTA's original answer during discovery in this litigation. A copy of the supplemental answer and counterclaims, marked "Exhibit A," is attached and incorporated by reference.

Respectfully submitted,

/s/
_____

David J. Ervin
Joanna Baden-Mayer
Kelley Drye & Warren LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC  20007-5108
(202) 342-8400

/s/
_____

Barbara E. Hoey*
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York 10178
(212) 808-7800

*Admitted *Pro Hac Vice*

Attorneys for Counterclaimant Plasma Protein
Therapeutics Association

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Scott W. DiBiasio,

         Plaintiff/Counter-Defendant

v.

Plasma Protein Therapeutics Association,

         Defendant/Counter-Plaintiff.

Civil Action No. 1:07-cv-00300 (PLF)

## DEFENDANT PLASMA PROTEIN THERAPEUTICS ASSOCIATION'S SUPPLEMENTAL ANSWER AND COUNTERCLAIMS

Defendant, Plasma Protein Therapeutics Association ("PPTA"), by its attorneys, states as its Supplemental Answer and Counterclaims against Plaintiff Scott W. DiBiasio ("DiBiasio") as follows:

### INCORPORATION OF PRIOR PLEADING

1.        Defendant incorporates herein the entirety of its answer and affirmative defenses filed in response to Plaintiff's Complaint.

### COUNTERCLAIM

### STATEMENT OF THE FACTS

2.        On October 29, 2003, Plaintiff and Counter-Defendant Scott W. DiBiasio signed and thus agreed to the terms of PPTA's Confidentiality and Non-Compete Agreement (the "Confidentiality Agreement") as a condition of his employment with PPTA.  A true and correct copy of said Confidentiality Agreement is attached hereto as Exhibit "A."

3.        PPTA's Confidentiality Agreement required DiBiasio to (1) refrain from revealing business or professional secrets or other personal or confidential information related to PPTA or its members that he may have learned during the during the exercise of assigned

functions or professional activities at PPTA, and (2) return to PPTA all business-related and confidential information, including copies in any form, immediately upon termination for any reason.

4.     Prior to the termination of DiBiasio's employment with PPTA on October 25, 2005, DiBiasio informed PPTA staff that he had been forwarding all PPTA business related e-mails from his PPTA e-mail account to his personal e-mail account for approximately five (5) months and had saved more than 4,000 such e-mails on his personal computer(s).

5.     Upon the termination of DiBiasio's employment, PPTA demanded that DiBiasio delete all such PPTA business-related e-mails from his personal computer(s), as required by PPTA's Confidentiality Agreement.

6.     DiBiasio informed PPTA, via e-mail on November 1, 2005, that he had in fact deleted all PPTA business-related e-mails from his personal computer, as required by PPTA's Confidentiality Agreement.

7.     On May 31, 2007 DiBiasio, through his attorney, produced to PPTA in response to PPTA's First Request for Documents in this action: (1) a confidential and attorney-client privileged memorandum concerning this case, created by a PPTA staff member and sent to counsel, on a date subsequent to DiBiasio's termination, and (2) numerous PPTA business-related e-mails (on which DiBiasio was neither a sender nor a recipient), four of which were e-mails created subsequent to DiBiasio's termination (the "PPTA Documents). These PPTA Documents were printed from DiBiasio's personal computer on May 14, 2007, and are attached hereto as Exhibit "B."

8.     On May 31, 2007, DiBiasio also produced through his attorney numerous PPTA e-mails, which, upon information and belief, DiBiasio obtained during and by reason of

his employment with PPTA, and forwarded to his personal computer. These PPTA documents were also printed from DiBiasio's personal computer on May 14, 2007. A sample of these PPTA business-related e-mails is attached hereto as Exhibit "C."

9.       Thus, Plaintiff Scott W. DiBiasio, PPTA's former employee, is in the possession of and has revealed to third parties at least one attorney-client communication and an as yet unknown number of PPTA privileged, confidential and proprietary e-mails and documents. Many of these documents post-date DiBiasio's employment with PPTA and are communications on which he was neither a sender or recipient.

10.      PPTA, at no time since DiBiasio's termination, authorized DiBiasio to access or possess its confidential, privileged documents or its e-mails, which are the sole and exclusive property of the PPTA.

11.      PPTA at no time authorized DiBiasio to convert the e-mails to his personal computer, or to maintain these PPTA documents subsequent to his termination.

12.      DiBiasio also did not have authorization to disclose these PPTA Documents to anyone.

13.      DiBiasio's conduct was a direct breach of his obligations under the Confidentiality Agreement, as well as directly contrary to the representation he made to PPTA on November 1, 2005.

14.      Upon information and belief, DiBiasio has somehow unlawfully accessed the e-mail account of another PPTA staff member, and/or otherwise unlawfully obtained access to PPTA's computers, and thus has been able to read , review, transmit and then save to his personal computer potentially thousands of PPTA e-mails and documents, many of which contain confidential, proprietary and trade secret information.

15.         PPTA has requested that DiBiasio, through his attorney, provide a written explanation as to how DiBiasio obtained these PPTA Documents and e-mails, as well as provide PPTA with access to DiBiasio's computer(s) — so that PPTA could ascertain how DiBiasio obtained its documents, and make sure they were deleted.  Attached as Exhibit "D" are letters dated June 7, 2007, June 11, 2007, and June 12, 2007.

16.         PPTA has received no written response to these letters, other than DiBiasio's counsel's motion to withdraw dated June 13, 2007.

**COUNT I**

**BREACH OF CONTRACT**

17.         PPTA repeats and realleges each and every allegation contained in paragraphs 1 to 16, as if fully set forth herein.

18.         As a condition of DiBiasio's employment with PPTA, DiBiasio agreed to be bound by the provisions of the Confidentiality Agreement which among other things obligated DiBiasio to:  (1) "refrain from…revealing business or professional secrets or other personal or confidential information" related to PPTA or its members, and (2) return to PPTA all of PPTA's "business-related and confidential information…in whatever form stored, immediately upon termination for any reason."

19.         DiBiasio has breached his obligations to PPTA under the Confidentiality Agreement by, among other things:  (1) removing PPTA business related and confidential e-mails to his personal computer, without PPTA authorization; (2) keeping these PPTA Documents and e-mails subsequent to the termination of his employment with PPTA, and (3) revealing personal and confidential information related to PPTA and its employees, as

contained in these e-mails and documents, to third parties, including but not limited to his attorneys.

20.        PPTA has been damaged as a result of DiBiasio's conduct and will continue to suffer damages unless and until DiBiasio is enjoined from engaging in any such further conduct (*e.g.,* enjoined from obtaining or revealing any such information or documents in the future), and PPTA is able to examine DiBiasio's computer to confirm that he has deleted all PPTA business-related and confidential information and documents in his possession.

## COUNT II

### VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

21.        PPTA repeats and realleges each and every allegation contained in paragraphs 1 to 20, as if fully set forth herein.

22.        DiBiasio has, upon information and belief, unlawfully accessed PPTA's computers, its e-mail and related systems and its documents, has misappropriated PPTA's confidential and business-related information, has disclosed that information to third parties and has attempted to use such information against PPTA in this litigation.

23.        DiBiasio has intentionally accessed a computer used in interstate and foreign communications and protected under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*, without authorization or by exceeding authorized access in violation of the Act.

24.        As a result of the foregoing conduct, PPTA has suffered impairment to the integrity or availability of its data, programs, systems, and information resulting in losses or damages in excess of $5,000 and to an extent not yet known but to be determined at trial.

25.        PPTA cannot be made whole solely by remedies at law; it is also entitled to injunctive relief barring all such unauthorized access by DiBiasio or anyone acting on his behalf.

## PRAYER FOR RELIEF

**WHEREFORE**, Defendant and Counter-Plaintiff PPTA respectfully urges judgment and relief against Plaintiff and Counter-Defendant DiBiasio as follows:

a.     A Temporary Restraining Order and Preliminary Injunction requiring DiBiasio to cease participating in activities that violate the his Confidentiality Agreement with PPTA and requiring him to delete any and all PPTA confidential or proprietary e-mails or documents currently stored on his computer(s) or otherwise in his possession;

b.     Compensatory damages in an amount to be determined at trial;

c.     Costs, expenses and reasonable attorneys fees incurred by the plaintiff;

d.     Pre-judgment and post-judgment interest on the foregoing sums; and

e.     Such other and further relief at law or equity as this Court may deem proper, just, and equitable under the circumstances.

Dated:  June 15, 2007

By: /s/ _____

David J. Ervin
Joanna E. Baden-Mayer
KELLEY DRYE & WARREN LLP
3050 K Street NW Ste. 400
Washington, D.C.  20007
Telephone: 202-342-8400
Facsimile: 202-342-8451

Barbara E. Hoey*
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York  10178
(212) 808-7800
(212) 808-7897 (facsimile)

* Admitted *Pro Hac Vice*

# EXHIBIT "A"



Plasma Protein Therapeutics Association

## CONFIDENTIALITY AND NON-COMPETE AGREEMENT

This AGREEMENT is entered into between **Plasma Protein Therapeutics Association** (the Employer) and **Scott W. DiBiasio** (the Employee) upon the acceptance by the Employee of employment by the Employer or for the continued employment of the Employee by the Employer.

The EMPLOYEE agrees:
1. To refrain from, during the time of employment as well as after termination for any reason, revealing business or professional secrets or other personal or confidential information, related to the Employer or the Employer's clients, that he/she may have learned during the exercise of assigned functions or professional activities.
2. That all business-related and confidential information, including all copies in any form, is the property of the employer and to return to the Employer all such information, in whatever form stored, immediately upon termination for any reason.
3. That during his/her employment by the Employer and for a period of 3 months after the effective date of termination of employment, the Employee will not directly or indirectly, be employed by or provide services to any association, successor association, organization, society or other person or entity which was or is a client of the Employer, without the mutual agreement of the Employer and Employee.

The EMPLOYER and EMPLOYEE agree that this AGREEMENT:

1. Shall not be interpreted to constitute an employment agreement or obligate either party to continue the employment arrangement.
2. Shall not be interpreted in a way to prevent the Employee from performing the duties, functions, and responsibilities assigned by the Employer.

This AGREEMENT was executed on _October 29, 2003,_

by: _____     _____
EMPLOYER                                          EMPLOYEE
Plasma Protein Therapeutics Association

# EXHIBIT "B"

CONFIDENTIAL - - ATTORNEY CLIENT PRIVILEDGED - - WORK PRODUCT                Page 1 of 5

CONFIDENTIAL - - ATTORNEY CLIENT PRIVILEDGED - - WORK PRODUCT

Julie Birkofer's notes from May 10, 2005 PPTA North America staff meeting. That morning I was in my office with the door closed on a Health Policy Steering Committee conference call with Anna Weinstein (AW). The heat built up in my office. I quickly stepped out to turn on the air conditioning. As soon as I sat down, the AC stopped. I got back up stepped out and turned on the AC. Again, it was quickly turned off. I stepped out and turned it back on and said aloud to no one in particular - - please don't turn off the AC, I'm dying of the heat in my office. Scott then responded back that just because I'm the Executive Director doesn't give me the right to think I have the authority to control the AC. I returned to my office.

After the conference call, I went in to Scott's office and asked him why he engaged with me on the AC with such emotion. He said again very loudly that just because I'm the E.D., I don't have the right to control the AC because PPTA has a rule that no one touches the thermostats. I told him that my office gets very warm because of the windows letting in sun and I was about to get sick. That from my "window" I feel like someone on staff doesn't care if I'm getting sick from the heat and I said that I understood that from his "window" I was making it too cool for him to be comfortable.

Scott then segued into an accusatory statement that he is tired of not being respected in the Division and that he feels that I treat other team members with preferential treatment. This statement struck me at my core and I took professional offense and disputed it with him. He got very loud and said that he is tired of the preferential treatment that I show Anna and other team members. I said that I treat of staff equally and fairly. He got loud enough that others in the office heard him yelling at me that I give preferential treatment and that other team members feel the same way.

I was so stunned and struck by him remarks that I approached Terry Del Prete and asked if he would step outside of the building where we had an assurance of privacy to discuss this with me. I told Terry that I felt I needed to address Scott's accusations quickly and deliver the same message to everyone on the N.A. team. I discussed with Terry that I would like to call a N.A. team meeting immediately and tell everyone that I value each and every one of them and that I pride myself on my professionalism and put the issue of preferential treatment on the table. This was such a busy time in the Division, we were one month out from the Association's annual meeting and we needed to act as a team. Divisiveness could weaken the team and in my opinion would have impacted our ability to operate as a unit.

I called the team (Patti Phillips, Gretchen Wyatt, Scott DiBiasio and Anna Weinstein. Danene Goffney called in.) together early in the afternoon. I opened the meeting with a statement that I value each person on the N.A. team and that it was brought to my attention that some of you may feel that there is preferential treatment for some staff members. I stated that nothing could be further from the truth and stated how much I value each person and the work they do. I talked about how all the successes in N.A. are achieved through team work and that at times I do different things for different people but I always take into account what's best for the individual, the team and the Association. Everyone seemed satisfied with the discussion and seemed to feel good, appreciated and respected. I asked if anyone had any further comments.

Anna then spoke up and said that we should be honest and that she and everyone heard Scott yelling at me earlier in the day and that she heard him yelling her name several times and that she was tired of Scott singling her out. Scott remained quiet. Anna then said that all of the bad feelings started between her and Scott over the issue of the distribution of baseball tickets. She continued to say that Scott accused Anna of getting her favorite team. Scott then mumbled that he didn't believe her about the tickets. Anna said that she was sick of the Red Sox thing. From their things escalated quickly:

SD:  Inappropriate comments to me, you may make more money than me – but it's not appropriate for you to talk to me in that tone.  You are no more qualified than me.

AW:  Just looking at him, shaking her head no.

SD:  Yelling and very emotional:  I am feeling sexually harassed right now over salary, office, time spent with the boss and the expense issue and I've talked to someone.  The favoritism shown is bordering on illegal like the comments that you (Julie) made to Anna – Why don't you date the guy and be a plasma whore.  Perception is reality and you (Julie) need to understand that in your position you need to treat everyone with kid gloves.

JB:  I tried to explain to Scott that I do treat everyone equally and with respect.

SD:  You say good morning to everyone else and not me, you unilaterally control the thermostat.  In a management role you need to treat everyone with kid gloves.  I am the only male in the office and I'm very uncomfortable now.

Then he took a breath and said he was ok and wanted to continue.

AW:  Some of us work on the same issues and field calls and work late

SD:  Don't go there - - working after you get home, I'm away from my family.

AW:  Some of us talk more often and work more closely because of the issues

SD:  (Directed to Julie) – You and Anna have a special relationship

JB:  Anna and I are not friends - - we are professional colleagues

SD:  Yes, you are friends at the Christmas party she went to your house

AW:  (Directed to SD) You've got a chip on your shoulder and that's your friggin' problem.

Anna then exited the room to go get Terry Del Prete.

Terry entered the conference room and Anna very upset left the premises entirely.

SD – I know for a fact who likes what team.

TD – this is a symptom of a bigger issue.  I sense you are genuinely uneasy and there is a heightened sense of sensitivities

SD:  Perhaps I used the wrong term, sexual harassment, I may have a little paranoia  There is a preferred relationship – you (Julie) made a comment to Anna to sleep with him and be a plasma whore.

JB – I admit I was wrong to say that and I apologize if the remark offended you, it was meant as a joke and said to Anna in the privacy of my office after business hours, I'm sorry you over heard it and were offended by it.

CONFIDENTIAL -- ATTORNEY CLIENT PRIVILEDGED -- WORK PRODUCT          Page 3 of 5

SD – Preferred relationship, she fell asleep in a meeting – I would have fired her on the spot for that but no she got a window office and makes more than I do.

JB – How do you know that?

SD: I got wind of the information, I saw Julie's paper with her salary on it. I'm the only guy in a department of females.

Terry excused the staff in the room. Now it's just Terry, Julie and Scott.

SD – There is a preferential relationship between Anna and Julie. I don't want it blown out of proportion – it's just my personality to be paranoid. I see things in a series of events – Anna got the window office, salary information I know, she's on the management team and I think to myself - - What am I not doing?

TD: I manage the offices and pay attention to detail. You have perceived she is paid more and she has more benefits.

SD: Why is she (Anna) gone? You let her. Window office is offered to her it should have been offered to others. Anna has a higher profile, reimbursement is more important so you offered Anna the window.

TD: It's about respect and fairness

SD: I've noticed that both her personality and the issues she works with causes Anna to think she's more important and Julie has developed a professional friendship with her, I am offended in her feeling that she's more important.

TD – Aw was hired because she has a pedigree resume, she makes more because she's uniquely qualified

JB – The role you do is your professional decision, the decision is made by the job function. Reimbursement is a huge priority for the Association that's why she's on the Management Team.

TD – Rewards come in time.

SD – How do I get past this hump so I don't think negatively?

JB – You got a promotion.

SD – yes, but is she going to get a promotion, then I would think someone else's contribution is more important

TD – Assumptions have been made because you're a man- - some true, some not - - set aside assumptions such as JB doesn't give you enough attention, she's not touch feely

SD – On the organization chart my box and Ann's are equal, I've been led to believe we're equal

JB – wrong assumption.

file://D:\Documents and Settings\Scott\My Documents\PPTA Email\CONFIDENTIAL - - ...    5/14/2007

CONFIDENTIAL - - ATTORNEY CLIENT PRIVILEDGED - - WORK PRODUCT

TD – Let's talk about assumptions and relativity issues - - What do you benchmark your success against.

SD – I keep a scorecard.

TD:  You are benchmarking against AW, remember you mentioned the org. chart issue.

JB:  Scott, every decision I make is all business, you are simply saying that you would feel better if there was another male in the department.

SD:  Anna has been given more exposure to the membership and more responsibility.

JB:  No, you have independence in the states.

TD:  Scott, you act in a certain way because they're females

SD – I know Anna said this to me - - How can you be a state lobbyist if you can't start a conversation.

SD – I consider AW a peer - - Josh Penrod and Brenda Norman are not, Anna is being treated better, Gretchen Wyatt feels the same. I want to make sure I don't fall behind, I want increased responsibilities to issues, more exposure to the membership, and increased access to Boards.  I feel like I'm Not on the same rocket ship to stardom, what do I need to do so that she (Anna) doesn't get ahead of me.  I hear and see a lot of things I don't want to hear and see.  Anna shares information with Julie and she gets preferential treatment from Julie.

TD:  I have a different relationship with Mike and Cathy.  Scott is more reserved, not as outgoing.

SD:  The bottom line is I'm getting a left out feeling and I can't speak for Gretchen Wyatt, but I'm feeling left out.

JB:  Scott, maybe you've been on the road too much and out of the office.

SD:  I'll be more sensitive in the office.  I'd suggest you don't give her more attention and see how everyone will react.  I struggle how to make friends in the office.

JB:  I apologize if I don't give you enough attention or if I've said things that offend you.

TD:  Virtue of necessity become friendly with AW.

SD:  My feelings have been escalating.  I've wondered how can I have these conversations about things that are bothering me - - conference calls and the thermostat.

JB:  Scott I let you go to Marco Island with Baxter - - that was high profile and a perk.

TD:  Scott you have a jealousy, you know Reimbursement is the top priority.

SD:  State Affairs is a top priority.

JB:  Let's talk about preferential treatment - - I let you travel, stay at nice hotels

CONFIDENTIAL - - ATTORNEY CLIENT PRIVILEDGED - - WORK PRODUCT    Page 5 of 5

SD:  I realize my sensitivities and how I perceive things, a lot of it has to do with the fact that I'm in the middle of buying a house

SD:  I want to be on our way to repairing our relationship, I have a lot going on with my house, closing, etc.

TD:  Be better in the future, look at your self.  Look at your box, see how far it goes, and ask yourself how far it will take me?  Assess your value based on how far it will go and ask yourself what are the 6 things I need to do to get there.

SD:  I don't have an analytical mind and Anna blew it out of proportion.

SD:  I'm feeling sensitive and other things cascade into it - - know I'm asking myself how to repair it (relationship with AW.)  I didn't realize AW had a problem with me, I am sensitive to her, I had no idea she had a problem with me.  I get the impression she can't tolerate me

SD:  I feel like I've come to a fork in the road - - I've though of leaving – the thought has crossed my mind.

JB:  Scott, I want you to leave for a better opportunity, not because I can't manage the team.

SD:  I'm a paranoid person, I'd like it to be ok.

JB: (To Scott) Yes, I value you and would never hurt you.

GroupWise WebAccess Message Item



## Mail Message

Close | Previous | Next | Delete From This Mailbox | Delete From All Mailboxes | Forward | Reply to Sender | Reply All | Move | Delete | Read Later | Properties

**From:** Julie Birkofer
**To:** Terry Del Prete
**Date:** Tuesday - September 6, 2005 12:21 PM
**Subject:** Fwd: Dr. Appt.

Hmmmm.

>>> Scott DiBiasio 09/06/05 10:45AM >>>
I've got an urgent Dr. appt @ 11:30 in Bowie.  I'll be back as soon as I can.

SD

## Mail Message

Novell.

| Close | Previous | Next | Purge | Undelete | Delete | Read Later | Properties |

**From:** Terry Del Prete
**To:** Julie Birkofer
**Date:** Tuesday - September 6, 2005 3:30 PM
**Subject:** Fwd: Re: Dr. Appt.

I think it was the "I am going to explode cause I can't manage my emotions" runout to breathe into a paper bag..

Course, that is just me.......

GroupWise WebAccess Message Item

## Mail Message

## Novell

Close | Previous | Next | Forward | Reply to Sender | Reply All | Move | Delete | Read Later | Properties

**From:** Anna Weinstein
**To:** Cathy Izzi
**CC:** Julie Birkofer
**Date:** Wednesday - December 21, 2005 3:38 PM
**Subject:** Re: Separation Information

Thank you Cathy. Please make sure to check the box so that the Fed-Ex person will leave the envelope if I am not home. I will be in the PPTA office at least part of the day next Wed. to tie up loose ends with Julie and to drop off my phone. Everything else is on my desk. There are receipts there that I need to attach to a last expense report so please leave them there. I also left gifts on my desk that I will distribute to my team next week. I am working from DC on finishing up the Lewin study, gathering my FTC related documents for Collier and finishing the IVIG Summit Group and PPTA comments due to CMS in early January. That will take me at least through the 30th. I will be at Collier tomorrow (Thursday).

I want you to know how deeply offended I am by the PPTA staff Christmas gift decision. I am upset not only by the fact that I was not given the gift that everyone else was but more importantly by the message it sends me about the organization's lack of appreciation for the major contribution I have made during my time there. I assume you didn't have a say in the matter, but I think it is absolutely outrageous that my reason for not being able to make it to the party is considered less acceptable than the others. My sister was in town from New York for a conference and stayed Friday night just to get some time with my mother and me. I very rarely get to spend time with her (and almost never without her fiance). It was unreasonable to ask her to leave my mother alone in DC or to drive all the way out to Edgewater (she doesn't even have a car) in the traffic to be my date. Secondly, I am Jewish and there is no reason I should be made to feel obligated to go to a Christmas party even if it is called a "holiday" party. I have never in my life heard of an organization that makes it mandatory for people to attend such a party to receive their thank you gift for the hard work done for the organization that year. I am terribly upset that after all I have given of myself to PPTA that is how I am treated. Even more insulting and petty is the fact that the three other people who missed the party (for their own personal reasons) got the gift check. I think it is sad on many levels that Jan did that. It leaves me with a very bad impression of the organization that I will certainly carry with me going forward. I wish you well and I am sorry things ended this way.

Sincerely,
Anna


Anna Weinstein
Senior Health Policy Analyst
Plasma Protein Therapeutics Association
147 Old Solomon's Island Road, Suite 100
Annapolis, MD 21401
Direct phone: (443) 433-1116
Office phone: (202) 789-3100 x2116
Mobile phone: (202) 669-2661
FAX: (410) 263-2298

E-mail: aweinstein@pptaglobal.org

http://mail.pptaglobal.org/servlet/webacc?merge=linkurl&Url.linkText=http://www.pptaglobal.org

The information in this e-mail is privileged and confidential. This e-mail is exclusively addressed to and intended to be used by its addressee(s). If you have received this e-mail mistakenly or are not the intended recipient, immediately contact the sender by e-mail (aweinstein@pptaglobal.org), by telefax (410.263.2298), or by telephone (1.410.263.6296 or 1.202.789.3100). Any disclosure, distribution, photocopying or any action taken or omitted to be taken related to this e-mail, is strictly prohibited. PPTA is neither liable for the proper and complete transmission of the information contained in this e-mail not for any delay in its receipt.

>>> Cathy Izzi 12/21/05 14:38 PM >>>
Dear Anna,

I will FedEx the package to your home.  If you have any questions, please feel free to contact me.

Best wishes,
Cathy

**Mail Message**                                                         Novell.

Close    Previous    Next    Forward    Reply to sender    Reply All    Move    Delete    Read Later    Properties

**From:** Anna Weinstein
**To:** Julie Birkofer
**Date:** Sunday - November 20, 2005 10:31 AM
**Subject:** Re: Fwd: Position Opening-PPTA North America, Maryland

Eccellent.  Maybe we can find a state Senator's staffer who is also a big sailor and wants to get out of whatever po dunk state they're in now????

Anna Weinstein
Senior Health Policy Analyst
Plasma Protein Therapeutics Association
147 Old Solomon's Island Road, Suite 100
Annapolis, MD 21401
Direct phone: (443) 433-1116
Office phone: (202) 789-3100 x2116
Mobile phone: (202) 669-2661
FAX: (410) 263-2298

E-mail: aweinstein@pptaglobal.org

http://mail.pptaglobal.org/servlet/webacc?merge=linkurl&Url.linkText=http://www.pptaglobal.org

The information in this e-mail is privileged and confidential. This e-mail is exclusively addressed to and intended to be used by its addressee(s). If you have received this e-mail mistakenly or are not the intended recipient, immediately contact the sender by e-mail (aweinstein@pptaglobal.org), by telefax (410.263.2298), or by telephone (1.410.263.8296 or 1.202.789.3100). Any disclosure, distribution, photocopying or any action taken or omitted to be taken related to this e-mail, is strictly prohibited.  PPTA is neither liable for the proper and complete transmission of the information contained in this e-mail not for any delay in its receipt.

>>> Julie Birkofer 11/19/05 13:52 PM >>>
AW - thanks for the suggestion, I wanted you to know that I did follow through.
j.

Julie A. Birkofer
Executive Director
PPTA North America
Suite 100
147 Old Solomons Island Road
Annapolis, MD 21401
Telephone:  202.789.3100
Facsimile:  410.263.2298
mobile:  202.997.0620
jbirkofer@pptaglobal.org

## Mail Message                                                                 Novell.

Close    Next    Forward    Reply to Sender    Reply All    Move    Delete    Read Later    Properties

**From:** Anna Weinstein
**To:** Julie Birkofer
**Date:** Friday - October 28, 2005 1:14 PM
**Subject:** Re: Fwd: Back of the envelope score calculation

Again, e-mail is easily misinterpreted as I am well aware and as you have recently pointed out to me. Your message is very curt and given all that I do for the organization working day and night and including opening my house to you and other members, I do not appreciate your tone at all. I am really actually quite tired of working nights and am going to start limiting that. I will get done what I can in eight hours a day. My life is no longer going to be PPTA.

Anna Weinstein
Senior Health Policy Analyst
Plasma Protein Therapeutics Association
147 Old Solomon's Island Road, Suite 100
Annapolis, MD 21401
Direct phone: (443) 433-1116
Office phone: (202) 789-3100 x2116
Mobile phone: (202) 669-2661
FAX: (410) 263-2298

E-mail: aweinstein@pptaglobal.org

http://mail.pptaglobal.org/servlet/webacc?merge=linkurl&Url.linkText=http://www.pptaglobal.org

The information in this e-mail is privileged and confidential. This e-mail is exclusively addressed to and intended to be used by its addressee(s). If you have received this e-mail mistakenly or are not the intended recipient, immediately contact the sender by e-mail (aweinstein@pptaglobal.org), by telefax (410.263.2298), or by telephone (1.410.263.8296 or 1.202.789.3100). Any disclosure, distribution, photocopying or any action taken or omitted to be taken related to this e-mail, is strictly prohibited. PPTA is neither liable for the proper and complete transmission of the information contained in this e-mail not for any delay in its receipt.

>>> Julie Birkofer 10/28/05 12:56 PM >>>
AW- don't take my feedback as criticism - it's simply how we can be more effective. Everyone at PPTA has been running around.

If the numbers are unfounded, provide constructive feedback to PC on how to improve it.
j.

Julie A. Birkofer
Executive Director
PPTA North America
Suite 100
147 Old Solomons Island Road
Annapolis, MD 21401
Telephone: 202.789.3100
Facsimile: 410.263.2298
mobile: 202.997.0620
jbirkofer@pptaglobal.org

>>> Anna Weinstein 10/28/05 12:32 PM >>>
I did talk to Patrick about these. Thanks for the input, I really appreciate it given all the running around I have been doing this week. These are TOTALLY unfounded numbers.

Anna Weinstein

Senior Health Policy Analyst
Plasma Protein Therapeutics Association
147 Old Solomon's Island Road, Suite 100
Annapolis, MD 21401
Direct phone: (443) 433-1116
Office phone: (202) 789-3100 x2116
Mobile phone: (202) 669-2661
FAX: (410) 263-2298

E-mail: aweinstein@pptaglobal.org

http://mail.pptaglobal.org/servlet/webacc?merge=linkurl&Url.linkText=http://www.pptaglobal.org

The information in this e-mail is privileged and confidential. This e-mail is exclusively addressed to and
intended to be used by its addressee(s). If you have received this e-mail mistakenly or are not the intended
recipient, immediately contact the sender by e-mail (aweinstein@pptaglobal.org), by telefax (410.263.2298),
or by telephone (1.410.263.8296 or 1.202.789.3100). Any disclosure, distribution, photocopying or any
action taken or omitted to be taken related to this e-mail, is strictly prohibited.  PPTA is neither liable for the
proper and complete transmission of the information contained in this e-mail not for any delay in its receipt.

>>> Julie Birkofer 10/28/05 12:07 PM >>>
AW - this is what PPTA should have been able to produce.

Julie A. Birkofer
Executive Director
PPTA North America
Suite 100
147 Old Solomons Island Road
Annapolis, MD 21401
Telephone:  202.789.3100
Facsimile:  410.263.2298
mobile:  202.997.0620
jbirkofer@pptaglobal.org

## Mail Message                                                    Novell.

Close  Previous  Delete From This Mailbox  Delete From All Mailboxes  Forward  Reply to Sender  Reply All  Move  Delete  Read Later  Properties

**From:** Julie Birkofer
**To:** Terry Del Prete
**Date:** Wednesday - October 26, 2005 3:11 PM
**Subject:** Re: CONFIDENTIAL - comment

TD - I absolutely did not tell her, the only conversation I've had w/her is to thank her for her offer to provide external messaging, but tell her no thanks.
j.

Julie A. Birkofer
Executive Director
PPTA North America
Suite 100
147 Old Solomons Island Road
Annapolis, MD 21401
Telephone: 202.789.3100
Facsimile: 410.263.2298
mobile: 202.997.0620
jbirkofer@pptaglobal.org

>>> Terry Del Prete 10/26/05 15:09 PM >>>
JB:

So Marcia came into my office today when she was offering her help on the outside communications.

Anyway, when she was leaving, she said, "Scott, what a nut case, what kind of psycho send all of those emails to his personal account". I barely acknowledged the comment. I wonder how she found out that fact? I did not tell her, and I bet you did not. I did not tell Charles so he could tell her. HMMMMM?

So when did the Director of Worldwide communications get involved enough in HR to know these things?

TD

## Mail Message                                                    Novell

Close  Previous Next  Delete From This Mailbox  Delete From All Mailboxes  Forward  Reply to Sender  Reply All  Move  Delete  Read Later  Properties

**From:** Julie Birkofer
**To:** Terry Del Prete
**Date:** Tuesday - September 6, 2005 3:27 PM
**Subject:** Fwd: Re: Dr. Appt.

>>> Scott DiBiasio 09/06/05 01:17PM >>>
Thanks for asking.  Nothing wrong, just ran out of some of my medicine over the weekend and realized I
didn't have any refills left and the Dr. won't call in prescriptions unless you see him.

>>> Julie Birkofer 9/6/2005 12:23:00 PM >>>
SD - No problem - sorry to hear this - -hope you're ok.
j.

>>> Scott DiBiasio 09/06/05 10:45AM >>>
I've got an urgent Dr. appt @ 11:30 in Bowie. I'll be back as soon as I can.

SD

**Mail Message**                                                    **Novell.**

| Close | Previous | Delete From This Mailbox | Delete From All Mailboxes | Forward | Reply to Sender | Reply All | Move | Delete | Read Later | Properties |

**From:** Julie Birkofer
**To:** Anna Weinstein
**Date:** Monday - July 18, 2005 2:50 PM
**Subject:** Fwd: Re: Today's call

Mike contacted Scott via e-mail, he passed Ken's e-mail on to SD.

>>> Anna Weinstein 07/18/05 12:57PM >>>
Is it me or did you ask me to deal with the AMP/ASP issue? Why is Scott contacting Mike Bradley about this and therefore making it seem like PPTA doesn't have a clue about what the difference is. I told Gretchen this morning that I have the info. and ASP/AMP that you asked us for in your e-mail and that I'd deal with it. This is FEDERAL Medicaid issue and I think it is in our purview not Scott's.

>>> Scott DiBiasio 07/18/05 12:53PM >>>

From what I'm told, its House Energy & Commerce that is driving AMP and Jeanne Haggerty is working on the medication therapy management issue and the establishment of "add-ons". Ken trader indicates in a separate e-mail that she is sympathetic to some of our issues. From what I know, AMP is the average price paid to a manufacturer by wholesalers for drugs distributed to retail pharmacies (only). According to Mike Bradley AMP is significantly lower than ASP since direct sales to HMOs and hospitals are excluded from AMP. Also, AMP is a manufacturer calculated, non-published number and Mike indicates some sensitivities in having to disclose AMPs in addition to ASPs.

SD

>>> Julie Birkofer 7/18/2005 10:30:10 AM >>>
See points below regarding Federal Medicaid reform - -

GW/DW - - we will need to do some Hill Visits on the issue of using J codes and not NDCs

GW - need an issue brief on Assuring Access to Plasma Protein Therapies in Medicaid Programs (focus on access/choice, unique not interchangeable, benefit of NDC (brand specific) reimbursement v. J codes (clustering)...

DW - need intel/info on who is driving the "medication therapy management" provision and who is driving using J codes and not brand specific NDCs.

GW - also need to ramp up NCSL/Governor offices strategy

AW/GW - need to understand the difference in the AMP and ASP methodologies - - what is AMP, what does in include or exclude that ASP does not.
tx,
j.

>>> Ken Trader < emtrader02@yahoo.com > 07/16/05 03:44PM >>>
Jan - I wondered why I was not seeing anything on the
initiative and realized today you were sending it to
my home email. I will get the numbers you are looking
for for HHS, but please, keep them confidential and do
not publish them except as aggregate numbers from all
those who submit.

Also, I was in DC with the other members of the
Hemophilia Coalition to Lobby on Medicaid reform. We

learned they are planning on using AMP vs. ASP as
their basis for their recommendation and cited Class
of Trade Issues as their reasoning. They are also
considering reimbursing on J-Code as opposed to NDC.
This, I believe, will impact access. What may be a
positive is that they are considering an AMP plus a %
(similar to Medicare's ASP plus 6%) They may also
consider allowing a "medication therapy management"
fee (MTM) for some therapies – We suggested they use
the Lewin Study that supported the Hemophilia Medicare
reimbursement decision.

All My Best
Ken
ken_trader@hemophiliahealth.com
615.850.5020

— Jan Hamilton < jan.hamilton@cox.net > wrote:

> Those who were on the call today were:Corey Dubin,
> Dave Cavanaugh, Julie
> Birkofer, Anna Weinstein, Patrick Collins, Paul
> Brayshaw, Kim Phelan,
> Meredith Zerbe and Jan Hamilton. Glen Mones was on
> jury duty and Sara
> Arnold sat in for Gavin Lindbergh and Dale Dirks.
>
> There were only 6 responses with ranking the Options
> and we pretty much
> decided it fell victim to summer and vacations, etc
> plus the many other
> things we have been working on including the
> Competitive Acquisition
> success.
>
> I pledged to re-contact the home care companies that
> has promised some data
> regarding numbers involved that we have not received
> as of this date. I did
> this after the call and added a couple other
> companies for insurance
> purposes. I asked each to let me know when I could
> expect to get the
> information and tentatively we have set the next
> call for three weeks from
> today. This could change depending upon receipt of
> the information. Upon
> receipt of the information, I will distribute it and
> the Options again and
> everyone will be asked to re-submit their rankings
> (1-2-3) based on the new
> data.
>
> One item discussed today was any reference to Part D
> and whether that might
> almost automatically throw us into Part D as hard as
> we have tried to stay
> away from it. Hemophilia is already being mentioned
> as a possible push
> toward Part D in the future.
>

> Another item that was discussed was that we might
> possibly want to stay away
> from the mention of 100% reimbursement and
> elimination of the 20% co-pay as
> being unreasonable in this climate.
>
> Thank you for your participation and your patience.
> This is a very
> important matter and a difficult one for a diverse
> group to reach an
> agreement on. One of the other problems is that we
> must realize that what
> starts with Medicaid is closely followed by Medicare
> and the Private Pay.
> Though this Medicare issue may not be a problem for
> a large percentage of
> our community today, as Medicaid tightens the belt,
> more people will be
> pushed to Medicare and then if the private pay
> industry follows Medicare's
> lead, the entire community will be affected. Our
> decisions are a heavy
> burden.
>

_____

Yahoo! Mail
Stay connected, organized, and protected. Take the tour:
http://mail.pptaglobal.org/servlet/webacc?
merge=linkurl&Url.linkText=http://tour.mail.yahoo.com/mailtour.html

# EXHIBIT "C"

**Subject:** Fwd: E-mail from Terry
**From:** "Scott DiBiasio" <sdibiasio@pptaglobal.org>
**Date:** Wed, 27 Jul 2005 10:34:33 -0400
**To:** <sdibiasio@comcast.net>

**Subject:** E-mail from Terry
**From:** "Scott DiBiasio" <sdibiasio@pptaglobal.org>
**Date:** Wed, 27 Jul 2005 10:34:33 -0400
**To:** "Patti Phillips" <pphillips@pptaglobal.org>

Patti:

Can you forward me the two e-mails from Terry DelPrete regarding Missy's replacement and the happy hour for Missy?  For some reason I did not receive them.

Thanks.
SD

| **E-mail from Terry.eml** | **Content-Type:** message/rfc822 |
|---|---|

Re: Fwd: Health Policy Steering Committee Emergency Conf...

**Subject:** Fwd: Re: Fwd: Health Policy Steering Committee Emergency Conference Ca...
**From:** "Scott DiBiasio" <sdibiasio@pptaglobal.org>
**Date:** Mon, 24 Oct 2005 17:15:37 -0400
**To:** <sdibiasio@comcast.net>

---

**Subject:** Re: Fwd: Health Policy Steering Committee Emergency Conference Call
**From:** "Julie Birkofer" <jbirkofer@pptaglobal.org>
**Date:** Mon, 24 Oct 2005 17:15:45 -0400
**To:** "Anna Weinstein" <AWeinstein@pptaglobal.org>, "Scott DiBiasio" <sdibiasio@pptaglobal.org>
**CC:** "Julie Birkofer" <jbirkofer@pptaglobal.org>, "Terry Del Prete" <tdelprete@pptaglobal.org>

Anna is accurate - - no information has been sent out to the HPSC other than the announcement
for this call - I am waiting for a Medicaid analysis from GW.
j.

```
Julie A. Birkofer
Executive Director
PPTA North America
Suite 100
147 Old Solomons Island Road
Annapolis, MD 21401
Telephone:  202.789.3100
Facsimile:  410.263.2298
mobile:  202.997.0620
jbirkofer@pptaglobal.org
```

> Anna Weinstein 10/24/05 16:42 PM >>>

Happy to include you Scott, there was absolutely no intent to exclude you.  The only message
that I sent out was this afternoon at the direction of Julie in response to a message she got
from Dennis.  We are really trying to stay above water with all that is going on in the IVIG
world and now and are scrambling to figure out what is going on with reconciliation both
Medicare and Medicaid.

> Scott DiBiasio 10/24/05 04:33PM >>>

Anna:

I haven't seen any of the communication to the HPSC regarding Medicaid reform.  I've gotten a
few inquiries on it from people that I work with regularly in the states and they've
mentioned some previous e-mails, etc. that have gone to the HPSC.  I'd appreciate it if you
could kindly copy me on any of those e-mails as this is an issue that we're going to be
dealing with the fallout of in the states beginning in January.  Many thanks.

SD

> Patti Phillips 10/24/2005 1:21:26 PM >>>

Attached please find the following:

1) HPSC05057 - memo from Anna Weinstein regarding an emergency HPSC call regarding Medicaid
reconciliation on Tuesday, October 25th at 4:00 p.m. (eastern) .

Please confirm your participation in this call with me via email at pphillips@pptaglobal.org
by COB, today, Monday, October 24th .

If you should have any difficulties opening the attachment, please feel free to contact me at
the Association.

# EXHIBIT "D"

# KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

3050 K STREET, N.W.

SUITE 400

WASHINGTON, D.C. 20007

————

(202) 342-8400

NEW YORK, NY

TYSONS CORNER, VA

CHICAGO, IL

STAMFORD, CT

PARSIPPANY, NJ

————

BRUSSELS, BELGIUM

————

AFFILIATE OFFICES
MUMBAI, INDIA

FACSIMILE

(202) 342-8451

www.kelleydrye.com

DIRECT LINE: (202) 342-8438

EMAIL: dervin@kelleydrye.com

June 7, 2007

**VIA FACSIMILE AND MAIL**

Alan Lescht, Esq.
ALAN LESCHT & ASSOCIATES, P.C.
1050 17th Street, N.W.
Suite 220
Washington, DC 20036

> Re:    Scott W. DiBiasio v. Plasma Protein Therapeutics Association
>        Civil Case No. 1:07-cv-00300 PLF

Dear Mr. Lescht:

I am writing to you about a potentially very serious matter, which requires your immediate attention.

On May 30, 2007, we received the documents that you produced pursuant to PPTA's First Set of Document Requests to your client, Mr. Scott DiBiasio, in the above referenced matter. Attachment 7 to your responses to these requests, which you identify as responsive to PPTA's Document Request No. 33, includes a five page memorandum written by Ms. Julie Birkofer, Mr. DiBiasio's supervisor during his employment with PPTA. This memorandum summarizes events relevant to your clients termination from PPTA and is clearly marked, in bold capital letters on each page, "CONFIDENTIAL – ATTORNEY CLIENT PRIVILEGED – WORK PRODUCT." This memorandum was, in fact, prepared at the request of counsel subsequent to the filing of your client's EEOC claim. It was prepared at the direction of and given exclusively to Kelley Drye, it was not distributed within PPTA, and certainly was not given to your client.

Also included in Attachment 7 are six e-mail communications between PPTA employees on PPTA accounts. Mr. DiBiasio is not identified as having sent or received any of these e-mails. Indeed, four of the six emails were written and sent after Mr. Dibiasio was terminated from PPTA, and thus no longer had access (or should not have had access) to the PPTA e-mail

Alan Lescht, Esq.
June 7, 2007          **KELLEY DRYE & WARREN** LLP
Page 2

system.  Curiously, Ms. Birkofer, however, is listed as either the author or recipient of each. These e-mails, like the privileged memorandum identified above, were never provided or made available to Mr. DiBiasio by either PPTA or Ms. Birkofer.  It is also curious that the documents appear to have been printed out, or accessed, on May 14, 2007.

We would like to know from you, immediately, how you and your client came into possession of these confidential, privileged documents.  PPTA has reason to believe that these documents were obtained by Mr. DiBiasio from Ms. Birkofer's PPTA e-mail account through improper, possibly criminal means.    PPTA and Kelley Drye are deeply disturbed by their violation of privacy, intrusion into their e-mail account, and intrusion into the attorney-client relationship.  We are currently exploring all of our options – but first demand an explanation from you and Mr. Dibiasio.

Finally,  I would like to respectfully remind you of your ethical obligations as an advocate and member of the District of Columbia Bar.  Under  D.C. Rule of Professional Conduct 3.4, you owe a duty of fairness to the opposing party and counsel.  Rule 3.4(a) states that "if...evidence received by the lawyer belongs to anyone other than the client, the lawyer shall make a good-faith effort to preserve it and to return it to the owner."    Further, Rule 1.15(b), regarding safekeeping of property, provides that "[u]pon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third party."  D.C. Bar Ethics Opinion  No. 318 makes clear that failure to return privileged material to an opposing party when the lawyer has reason to believe that such material has been taken without authorization can constitute a violation of these and other rules of professional conduct:

> When counsel in an adversary proceeding receives a privileged document from a client or other person that may have been stolen or taken without authorization from an opposing party, Rule 1.15(b) requires the receiving counsel to refrain from reviewing and using the document if: 1) its privileged status is readily apparent on its face; 2) receiving counsel knows that the document came from someone who was not authorized to disclose it; and 3) receiving counsel does not have a reasonable basis to conclude that the opposing party waived the attorney-client privilege with respect to such document. *Receiving counsel may violate the provisions of Rule 8.4(c) by reviewing and using the document in an adversary proceeding under such circumstances and should either return the document to opposing counsel or make inquiry of opposing counsel about its status prior to determining what course of action to take.*

D.C. Bar Ethics Op. 318 (Dec. 2002) (emphasis added).

We cannot conceive of how your client could have explained to you his possession of a document clearly marked as "Attorney Client Privileged," or e-mails to which he was not a party.  What is clear is that, absent some good faith basis to believe that he lawfully possessed

Alan Lescht, Esq.
June 7, 2007                  **KELLEY DRYE & WARREN** LLP
Page 3

those materials, you were under an obligation to return them to us and PPTA. All of these documents are PPTA property that should not have been in Mr. DiBiasio's possession, and the memorandum was conspicuously marked as privileged. That Mr. DiBiasio was not authorized to possess or disclose this material should have been obvious. Nonetheless, you are hereby notified that the materials in Attachment 7 to Mr. DiBiasio's responses to PPTA's document requests are PPTA property that Mr. DiBiasio is not and never has been authorized to either possess, disclose or distribute.

Please promptly return these and any other documents like them to PPTA, through the undersigned, and provide me with a written, signed confirmation that this has been accomplished. Also, please provide a written certification that Mr. DiBiasio has not and does not have access to any PPTA computer or server.

**Further, in light of the above, you are hereby placed on notice that we will request discovery of Mr. DiBiasio's laptop and any computer that he uses at home. Starting immediately, nothing is to be done to destroy, delete or modify anything on those computers.**

Very truly yours,

David J. Ervin

cc: Susan Kruger, Esq.

# KELLEY
## DRYE

# FACSIMILE TRANSMISSION

| TO | FAX | PHONE |
|---|---|---|
| Alan Lescht<br>Alan Lescht & Associates, P.C.<br>Washington | (202) 463-6067 | (202) 463-6036 |
| David J. Ervin<br>Kelley Drye & Warren<br>Washington | (202) 342-8400 | (202) 342-8451 |

**KELLEY DRYE & WARREN LLP**
**101 PARK AVENUE**
**NEW YORK, NEW YORK 10178**
**(212) 808-7800**
**FAX (212) 808-7897**

**NO. OF PAGES**      3 (including this page)

**DATE**      June 11, 2007

**MESSAGE:**      Please see the attached.

**FROM**      Barbara E. Hoey

**PHONE**      (212) 808-7836

**E-MAIL**      bhoey@kelleydrye.com

**TIMEKEEPER ID**      00845

**CLIENT NO.**      732770-0602

**NEW YORK, NY**
**WASHINGTON, DC**
**TYSONS CORNER, VA**
**CHICAGO, IL**
**STAMFORD, CT**
**PARSIPPANY, NJ**
**BRUSSELS**

**AFFILIATE OFFICES**
**JAKARTA**
**MUMBAI**

**IF PROBLEMS OCCUR DURING TRANSMISSION PLEASE CALL (212) 808-5035.**

The information contained in this facsimile message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivery to the intended recipient, you are hereby notified that any use, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction.

NY01/HOEYB/1216558.1

# KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

**101 PARK AVENUE**

**NEW YORK, NEW YORK 10178**

————

(212) 808-7800

WASHINGTON, DC
TYSONS CORNER, VA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

————

BRUSSELS, BELGIUM

————

AFFILIATE OFFICES
MUMBAI, INDIA

FACSIMILE
(212) 808-7897
www.kelleydrye.com

BARBARA E. HOEY

DIRECT LINE: (212) 808-7836

EMAIL: bhoey@kelleydrye.com

June 11, 2007

VIA FACSIMILE 202-463-6067

Alan Lescht, Esq.
Alan Lescht & Associates, P.C.
1050 17th Street, N.W.
Suite 220
Baltimore, MD 21201

Re:    Scott W. DiBiasio v. Plasma Protein Therapeutics Assoc

Dear Alan:

As Dave Ervin I believe told you, I am working with him on this litigation. We received your email on Friday afternoon indicating that the attorney client privileged document, which was produced by Plaintiff last week, has been "destroyed." I am writing to make it clear to you that your email does not end this matter.

First, we would like a letter, on your letterhead, confirming that the original and any paper copies of the document have been destroyed. We will also request a separate, written certification signed by Scott DiBiasio confirming that all paper versions of the document which he had, likewise, have been destroyed.

**At the same time – WE DO NOT want Mr. DiBiasio to delete that or any documents from his computer hard drive.** We want to determine how the document came to reside on his hard drive. As requested in our letter of June 7, please instruct Mr. DiBiasio **not to delete or modify anything from his computer.**

Second, you agreed in a conversation with Dave Ervin last week to produce Mr. DiBiasio's computer for forensic inspection. We served you with Plaintiff's Notice for that inspection on Friday. Given that we have your consent to the inspection, I see no need to wait 30 days for you to formally respond to the Notice. Please let me know how many computers Mr. DiBiasio has and/or uses, and when we can have access to them to conduct the forensic inspection. Perhaps, assuming at least one computer is a laptop, Mr. DiBiasio could bring it with him to his deposition on Thursday and we could begin the inspection at that time.

**KELLEY DRYE & WARREN LLP**

June 11, 2007
Page Two

      Lastly, on the subject of the privileged document and other internal PPTA emails which you produced in "Attachment 7" to Plaintiff's production – PPTA continues to be very disturbed by this issue.  For one, and apart from the wholesale invasion of our attorney-client relationship, PPTA is concerned that their email and computer systems were somehow compromised by Mr. DiBiasio.  We are also anxious to receive a written response to the questions in our letter of June 7, in which we asked for an explanation as to how Mr. DiBiasio came into possession of those emails.

      We are still considering all options and reserve all rights in this regard.

      Please get back to me on the computer inspection, so that we can make arrangements for the forensic examination.

      I look forward to seeing you and Mr. DiBiasio on Thursday.

               Sincerely,

               Barbara E. Hoey

BEH:dd

cc:    David Ervin, Esq.

# KELLEY
## DRYE

# FACSIMILE TRANSMISSION

| TO | FAX | PHONE |
|---|---|---|
| Alan Lescht<br>Alan Lescht & Associates, P.C.<br>Washington | (202) 463-6067 | (202) 463-6036 |
| David J. Ervin<br>Kelley Drye & Warren<br>Washington | (202) 342-8451 | (202) 342-8400 |

**KELLEY DRYE & WARREN LLP**
**101 PARK AVENUE**
**NEW YORK, NEW YORK 10178**
**(212) 808-7800**
**FAX (212) 808-7897**

**NO. OF PAGES**     3 (including this page)

**DATE**     June 12, 2007

**MESSAGE:**     Please see the attached.

| | |
|---|---|
| **FROM** | Barbara E. Hoey |
| **PHONE** | (212) 808-7836 |
| **E-MAIL** | bhoey@kelleydrye.com |
| **TIMEKEEPER ID** | 00845 |
| **CLIENT NO.** | 732770-0602 |

**NEW YORK, NY**
**WASHINGTON, DC**
**TYSONS CORNER, VA**
**CHICAGO, IL**
**STAMFORD, CT**
**PARSIPPANY, NJ**
**BRUSSELS**

**AFFILIATE OFFICES**
**JAKARTA**
**MUMBAI**

**IF PROBLEMS OCCUR DURING TRANSMISSION PLEASE CALL (212) 808-5035.**

The information contained in this facsimile message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivery to the intended recipient, you are hereby notified that any use, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction.

NY01/HOEYB/1216558.1

# KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

## 101 PARK AVENUE

### NEW YORK, NEW YORK 10178

(212) 808-7800

WASHINGTON, DC
TYSONS CORNER, VA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ
———
BRUSSELS, BELGIUM
———
AFFILIATE OFFICES
MUMBAI, INDIA

FACSIMILE
(212) 808-7897
www.kelleydrye.com

BARBARA E. HOEY

DIRECT LINE: (212) 808-7638

EMAIL: bhoey@kelleydrye.com

June 12, 2007

**VIA FACSIMILE**

Alan Lescht, Esq.
Alan Lescht & Associates, P.C.
1050 17th Street, N.W.
Suite 220
Washington, DC 20036

Re:   Scott W. DiBiasio v. Plasma Protein Therapeutics Assoc

Dear Alan:

As discussed this afternoon, we are surprised to receive your letter canceling Mr. DiBiasio's deposition. This deposition has been scheduled for weeks, and has been re-confirmed with your office several times – most recently last week when we confirmed the exchange of documents and discovery.

What has happened to so suddenly make Mr. DiBiasio unavailable?

Also, when can we expect a response to my letter of yesterday.

Most importantly, we need to know when we will get access to Mr. DiBiasio's computer. Please remind him again not to delete anything from it.

PPTA was waiting for the deposition Thursday to ask Mr. DiBiasio, under oath, how he obtained its documents and whether he had any other property belonging to the PPTA. Since you are now canceling that deposition, we will have no choice to make a Motion and seek Injunctive relief – in order to obtain those materials.

Lastly and equally seriously, we have another serious issue which we need to address with you. Yesterday, at **11 PM**, EST, multiple staff members at PPTA received "hang up" phone calls at their home. At that same time, multiple PPTA staff in Brussels also received

NY01/HOEYB/1216891.1

**KELLEY DRYE & WARREN LLP**

Alan Lescht
June 12, 2007
Page Two

similar "hang up" phone calls at **5 PM** European time. These calls came to home phones, some are which are unlisted numbers. One call was to the home of the wife of the PPTA CEO.

PPTA is currently investigating this matter. Were are not in a position to accuse Mr. DiBiasio, **but we are very concerned**. We trust that you will instruct your client not to engage in this, or any similar harassing or unlawful behavior. Please confer with your client and make sure that his behavior is guided accordingly.

You have promised to get back to us by tomorrow afternoon with an explanation for the cancellation of the deposition, and for more information as to the forensic inspection of the computer.

Sincerely,

Barbara E. Hoey

BEH:dd

cc:    Dave Ervin, Esq.